ULSTER COUNTY.—HON. ALTON B. PARKER, SURRO-
GATE.—July, 1882.

LEFEVER v. HASBROUCK.

*In the matter of the judicial settlement of the account
of JACOB J. HASBROUCK, executor of the will of
MARIE DuBOIS, deceased.*

An executor has no right to invest moneys of the estate in personal se-
curities. If he does, and a loss occur, he must bear it, together with
the cost of any litigation instituted by him in order to realize.

Testatrix, by her will, directed the executor " to keep invested " the
sum of $1,000, and pay the interest accruing thereon to one for life,
with remainder over. The executor lent $500 on the note of B. and
J., who were the owners of valuable realty and considered perfectly
responsible, but who afterwards failed, the note becoming worthless.
There was no question as to the good faith of the investment.—

*Held*, that the executor could not turn over the note to the legatee in re-
mainder, as an investment made for his benefit, but must pay him
the amount.

HEARING of objection by Noah Lefever, legatee, upon
the judicial settlement of the account of executor of de-
cedent's will.    The facts appear sufficiently in the
opinion.

S. G. YOUNG, *for executor.*

NOAH LEFEVER, *legatee, in person.*

THE SURROGATE.—By the will of Marie DuBois, the
executor was directed to keep invested the sum of one
thousand dollars, and to pay the interest accruing there-

on to Cornelius DuBois, during his lifetime ; the principal sum, after the death of Cornelius DuBois, to be divided equally between Hampton Lefever and Noah Lefever.

In 1872, the executor lent $500 to Benjamin F. Atkins and Jonas F. Atkins, on their note ; at the time of the making and delivery of which each of the makers was owner of valuable unincumbered real estate, and was considered perfectly responsible. Subsequently, the makers failed. The executor took prompt measures to collect the note, but, after a long litigation, failed to obtain any sum whatever thereon.

The question presented is whether the executor must lose this sum, together with the costs he has already expended in trying to collect the note, or whether he may be permitted to turn over the latter to Noah Lefever, as an investment made for his benefit. The good faith of the transaction is not questioned. It is not doubted that the executor believed at the time that the investment was perfectly safe, and the security as good as could be readily obtained. The only point involved, therefore, is whether an executor has a right to invest moneys intrusted to his care in personal securities.

In Bogart v. Van Velsor (4 Edw. Ch., 722), it was held that the rule is established in equity, that, if the executor make a loan on personal security, and a loss occur, he must bear the loss. The same rule is laid down in Dayton on Surrogates, at page 521. The duty of a trustee is, first, to invest the money intrusted to him so that the principal sum shall be perfectly safe, and so that it can be speedily called in for the benefit of the cestui que trust; second, to see to it that the

fund produce as large an income as possible, and at the same time be a perfectly safe investment.

A trustee has no right to take any risk in making investments. The fund must not be placed where its safety depends upon the success of the business in which it is adventured, or the ability and honesty of other parties to whom it is entrusted.

In King v. Talbot (*40 N. Y.*, *76*), the executors invested the funds of the estate in stock of the Delaware and Hudson Canal Company, the New York and Harlem Railroad Company, the New York and New Haven Railroad Company, the Bank of Commerce, and the Saratoga and Washington Railroad Company. The legatee refused to accept the stocks, which, at that time, had depreciated somewhat in value, and the court held that the executors were not at liberty to invest the fund in stock, and that the legatees were not bound to accept these stocks, as and for their legacies or the investment thereof.

In the matter of James Foster (*15 Hun*, *387*), the court says that the law does not recognize promissory notes as valid investments, and that the executor, therefore, continues to be responsible for the security of such investments.

In 2 Williams on Ex'rs, *1640*, it is stated that the rule is now completely established in equity, that an executor or administrator lending money of the deceased upon bond, promissory notes or other personal security, is guilty of a breach of trust, and is personally answerable if the security prove defective.

The executor cannot, therefore, be permitted to turn over the note to Noah Lefever, in satisfaction of his

legacy, but must pay to the legatee the amount due him.

A decree must be entered accordingly.